UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JIM NATION and LISA NATION, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 25-CV-0342-CVE-MTS |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY and JIM CAMPOS, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is plaintiffs' motion to remand (Dkt. # 18). Defendant State Farm Fire and Casualty Company ("State Farm") removed this case to federal court on the basis of diversity jurisdiction (Dkt. # 2), despite the fact that plaintiffs Jim and Lisa Nation and defendant Jim Campos are all citizens of Oklahoma. State Farm argues that plaintiffs joined Campos as a defendant solely to defeat diversity jurisdiction, and Campos should be disregarded as a party for the purposes of determining whether the Court has jurisdiction. Dkt. # 18, at 8. Plaintiffs seek remand to Tulsa County District Court on the ground that they have a viable cause of action against Campos arising out of constructive fraud and misrepresentation, as well as negligent procurement of insurance, and therefore complete diversity of citizenship does not exist. Id.

**I.**

On March 24, 2024, plaintiffs Jim and Lisa Nation filed this case in Tulsa County District Court. Dkt. # 2-1. Plaintiffs alleged claims against State Farm and Campos arising out of State Farm's denial of plaintiffs' hail damage claim. Id. ¶¶ 6-11. In 2015, plaintiffs purchased an insurance policy for their residence from State Farm, through an agent who has since retired. Dkt. # 2-7, ¶ 5. The policy was set to automatically renew yearly. Dkt. # 2-8, at 4. When the agent who

originally procured plaintiffs' policy retired, the policy was transferred to Campos's agency. Id. ¶ 4. In April 2023, one of Campos's employees invited plaintiffs to come to the agency to discuss the policy and coverage, but plaintiffs declined. Id.; Dkt. # 28-2, ¶ 10. State Farm alleges that during the period that Campos was the agent for plaintiffs' policy, neither Campos nor his agents personally spoke with or had any direct contact with plaintiffs, other than that aforementioned invitation. Dkt. # 2-7, ¶¶ 4-6; but see Dkt. # 28-2, ¶ 11 (describing one email exchange between plaintiff Jim Nation and a member of Campos's staff regarding a separate rental dwelling property quote in September 2023). Nor did Campos or his agents personally inspect defendants' property. Dkt. # 2-7, ¶ 6. Campos states that the policy was "managed by State Farm, not [his] office." Id. ¶¶ 4-7.

Plaintiffs allege that in April 2024, their residence suffered damage from a hail storm. Dkt. # 2-1, ¶¶ 6-11; Dkt. # 18, at 8. After reporting the damage to State Farm, an individual acting on behalf of State Farm, not associated with Campos, inspected the property. Dkt. # 2-1, ¶¶ 10-11. State Farm found that the residence had sustained minor wind damage to one singular roof shingle, hail damage to the roof's soft metals, and interior water damage. Id. ¶ 11; Dkt. # 18, at 8. State Farm estimated the total damage covered to be $6,509.96, paying plaintiffs $611.96 after reducing the total damage amount by plaintiffs' deductible of $5,898.00. Dkt. # 2-1, ¶ 12; Dkt. # 18, at 8. Plaintiffs allege that State Farm denied any coverage beyond the $6,509.96 estimate on the basis that damage beyond this amount was attributable to product defect or wear and tear that were not covered by plaintiffs' policy. Dkt. # 18, at 8; Dkt. # 2-1, ¶ 13. Plaintiffs sought an estimate for the entire cost of repair to the residence for all damage and were given a quote of $45,598.28. Dkt. # 2-1, ¶14; Dkt. # 18, at 8. Plaintiffs provided State Farm with that estimate and further documentation detailing the

damage they believed should have been covered by their policy, but they assert that State Farm declined to reinspect. Dkt. # 2-1, ¶ 15. Dkt. # 18, at 8.

Plaintiffs sued State Farm for breach of contract, and State Farm and Campos for negligent procurement of insurance and constructive fraud and misrepresentation, all under the theory that State Farm routinely denies insurance coverage resulting from wind or hail claims under a false pretext that wear and tear or product defect excludes such damage from coverage under its policies. Dkt. # 2-1, ¶ 16. With respect to Campos, plaintiffs assert that he, like other "frontline underwriters," intentionally "represent[ed] to the customer that the customer's property [is] insured [and] meets State Farm's underwriting requirements and that their home is free from damage, defects, [and] wear and tear." Id. ¶ 17. They allege that an agent like Campos routinely uses a "software provided by State Farm" to "input various attributes about the property, which includes the condition, age, and surface materials of the roof" and then based on the input, the software "calculate[s] the replacement cost of the insured's property." Id. ¶ 18. State Farm then issues a policy based on those inputs while the agent "represent[s] to the insured the coverage will pay for any losses that occur and pay an amount to restore the damage d property to its pre-loss condition." Id. ¶¶ 20-21. Plaintiffs allege that Campos "represented" the condition of plaintiffs' roof to State Farm by "inputting" attributes about the property into State Farm's software, and they argue that Campos was under a duty but failed to inform plaintiffs that the poor condition of their roof would preclude full coverage in the event of a loss. Id. ¶¶ 24-25; Dkt. # 18, at 9.

After State Farm rejected plaintiffs' claim for property damage beyond the amount previously paid, plaintiffs brought suit in Tulsa County District Court. Dkt. # 2-1. Thereafter, State Farm filed a notice of removal to this Court. Dkt. # 2. State Farm asserted that this Court has subject-matter

jurisdiction because plaintiffs fraudulently joined Campos in an attempt to destroy diversity jurisdiction. Id. ¶¶ 3, 10-17. Campos filed a motion to dismiss, arguing that plaintiffs had fraudulently joined Campos for the sole purpose of undermining diversity jurisdiction, and that the Court should dismiss his claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. # 9, at 7. Subsequently, plaintiffs moved to remand, arguing that the Court lacks subject-matter jurisdiction. Dkt. # 18. Plaintiffs claim that because State Farm has failed to meet its burden in proving that plaintiffs do not have a viable claim against Campos, a citizen of the state of Oklahoma, total diversity does not exist and removal was therefore inappropriate. Id. at 10. State Farm responded, arguing that plaintiffs had fraudulently joined Campos in a bad-faith attempt at undermining the complete diversity that exists among plaintiffs and State Farm and that plaintiffs cannot state a viable claim against Campos. Dkt. # 22, at 7. To that response, State Farm attached an affidavit of Campos, in which he stated that he had neither personally spoken with the plaintiffs about the policy, nor played any role in renewing or managing plaintiffs' policy. Dkt. # 22-2, ¶¶ 4-6. Plaintiffs replied, arguing that they had stated a viable claim against Campos and that State Farm had not made the requisite showing of fraud. Dkt. # 25, at 1, 5. To that reply, plaintiffs attached an affidavit of plaintiff Jim Nation, in which he alleged, inter alia, that he and plaintiff Lisa Nation "had conversations with Mr. Campos and his agency after he took over [their] policy." Dkt. # 25-1, ¶¶ 3, 5-6.

Thereafter, defendant filed a surreply to address the new evidence raised by plaintiffs in their reply, namely Nation's affidavit. Dkt. # 27. In its surreply, State Farm reiterated that plaintiffs have failed to substantiate any of the conclusory statements offered in support of its claims against Campos, and based on the evidence that it put forth, State Farm has made a sufficient showing that

plaintiffs representations regarding Campos are conclusively unable to be substantiated. Dkt. # 28, at 3. State Farm asked the Court to deny plaintiffs' motion to remand and, in the alternative, asked that if the Court does not deny the motion, it enter a stay and allow the parties to proceed with limited jurisdictional discovery. Id. at 4. State Farm also attached to its surreply another affidavit of Campos, in which he recounted a search of his agency's database of client documents, his and his agents' email accounts, text messages between the agency and clients, and internal agency notes on communications with clients; he stated that he found no evidence of communications between plaintiffs and his agents regarding the policy at issue, aside from the one invitation to discuss the policy when it was transferred to the agency in April 2023, which plaintiffs declined. Dkt. # 28-2; see also Dkt. # 28-1. Following replete briefing, the motion is now ripe for consideration.

## II.

Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction. Merida Delgado v. Gonzalez, 428 F.3d 916, 919 (10th Cir. 2005); Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999); Penteco Corp. v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1999). "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex. rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). The burden of establishing subject-matter jurisdiction lies with the party seeking to assert federal jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 182 (1936); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the

party asserting jurisdiction."). In determining whether remand is appropriate, a Court must strictly construe the removal statute and resolve all doubts against removal. Fajen v. Found. Res. Ins. Co., 683 F.2d 331, 333 (10th Cir.1982).

A defendant may remove a case to federal court if the case is one over "which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." The Supreme Court has construed § 1332 to require complete diversity, and a "plaintiff must meet the requirements of the diversity statute for each defendant." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989) (emphasis in original). The Supreme Court has recognized that a litigant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). In such a case, the party seeking removal bears the burden of showing that there is "no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court." Montano v. Allstate Indemnity, No. 99-CV-2225, 2000 WL 525592, at *2-3 (10th Cir. Apr. 14, 2000) (quoting Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000)) (alterations in original).[1] That showing must be "such as compels the conclusion that the joinder is without right and made in bad faith," in that it "was without any reasonable basis." Chicago, R.I. & P. Ry. Co. v. Whiteaker, 239 U.S. 421, 425 (1915) (quoting Chesapeake & O.R. Co. v. Cockrell, 232 U.S. 146, 152 (1914)). A defendant may show fraudulent joinder either by (1) showing "actual

---

[1]  Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

fraud in the pleading of jurisdictional facts" or (2) demonstrating the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013) (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)).  If a defendant prevails in showing that all non-diverse defendants were fraudulently joined and the remaining parties are completely diverse, then the court has subject-matter jurisdiction. Am. Nat. Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder.").

"The case law places a heavy burden on the party asserting fraudulent joinder." Montano, 2000 WL 525592, at *1.  When a defendant raises "specific allegations of fraudulent joinder, the court may pierce the pleadings" and "consider the entire record, and determine the basis of joinder by any means available." Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d 879, 882 (10th Cir. 1967); Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964).  "After resolving disputed questions of fact and ambiguities in favor of the plaintiffs, the court then determines whether they have 'any possibility of recovery against the party whose joinder is questioned.'" Asbury v. N. Star Mut. Ins. Co., No. 14-CV-1331, 2015 WL 588607, at *1 (W.D. Okla. Feb. 11, 2015) (quoting Montano, 2000 WL 525592, at *1).  "[T]he court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." Nerad v. AstraZenica Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006).  "A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." Id.  Although the Court can pierce the pleadings, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine

removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot, 378 F.2d at 882. And when challenged on the matter of diversity jurisdiction, "the parties must support their allegations by competent proof." Hertz Corp. v. Friend, 559 U.S. 77, 96-97 (2010).

### III.

The issue before the Court is whether plaintiffs have alleged any possible basis for recovery against Campos for negligent procurement of insurance or for constructive fraud and misrepresentation. With regard to the negligent procurement claim, Oklahoma law recognizes that insurance agents have a duty "to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured, if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." Swickey v. Silvey Cos., 979 P.2d 266, 269 (Okla. Civ. App. 1999). "This duty rests, in part, on 'specialized knowledge [about] the terms and conditions of insurance policies generally.'" Rotan v. Farmers Ins. Grp. of Cos., 83 P.3d 894, 895 (Okla. Civ. App. 2003) (citing Swickey, 979 P.2d at 269). This duty applies to an agency in exercising "reasonable care and skill in performing its tasks, i.e. procuring insurance and making any necessary corrections or adjustments after a policy is issued." Swickey, 979 P.2d at 269. In other words, an agent must have "performed" some task in order for that agent to have been obligated to exercise the duty required by law and, by extension, for that agent to have breached the duty. Oklahoma law also does not impose any affirmative duty to advise their clients about their insurance needs, but an agent must "offer coverage . . . for needs that are disclosed by the insured." Asbury, 2015 WL 588607, at *2 (quoting Rotan, 83 P.3d at 895); Rotan 83 P.3d at 896. With regard to constructive fraud and misrepresentation, those claims require a plaintiff to show that the agent owed

8

the plaintiff a duty and, inter alia, that the agent made "a false misrepresentation of a material fact." Gish v. ECI Servs. of Okla., Inc., 162 P.3d 223, 228 (Okla. Civ. App. 2006). Because State Farm has shown that Campos never performed any task or made any representations to plaintiffs about the policy at issue, the Court finds that State Farm has met its burden in showing that plaintiffs have no possibility of recovery against Campos, and therefore this Court has jurisdiction over plaintiffs' claims against State Farm.

As State Farm correctly states, resolving whether plaintiff has stated a viable claim against Campos turns primarily upon whether Campos or his agents communicated about the policy at issue. See Dkt. # 28, at 2. For plaintiffs to prevail on either a claim of negligent procurement or constructive fraud and misrepresentation they would have to show that Campos made a statement, had a conversation, or made some representation regarding the policy at issue. So, what communications were there between Campos and plaintiffs regarding the policy at issue? The parties agree that Campos did not procure plaintiffs' original policy, and that his only association with plaintiffs occurred once that the policy transferred to his agency after the original agent retired in April 2023. Dkt. # 18, at 17 n.2; Dkt. # 22, at 9; see also Dkt. # 28-1. The parties also agree that following the policy's transfer, Campos' agency contacted plaintiffs, but the content of that conversation was limited to an introduction to the agency and an invitation to come to the agency in person, which plaintiffs declined. Dkt. # 25-1, ¶¶ 3-4; Dkt. # 25, at 16; Dkt. # 22-2, ¶ 4; Dkt. # 28-2, ¶ 10. Then, in July 2023, Plaintiffs' policy automatically renewed with Campos listed as the associated agent. Dkt. # 22-5, at 2, 4. It is at this point that the parties disagree as to what communications, if any, occurred.

State Farm has offered three affidavits of Campos, in which he repeatedly states that he has "not personally spoken to the Nations regarding the Policy" at issue and that he "played no role in the renewal of the policy," which is "managed by State Farm, not [his] office." Dkt. # 22-2, ¶¶ 3-5; Dkt. # 22-4, ¶¶ 3-5; see also Dkt. # 28-2. Campos attested to searching through his agency's communications, including text messages, emails, and internal files and notes, all of which indicate that the agency has had no contact with plaintiffs about this policy aside from the first invitation. Dkt. # 28-2, ¶¶ 9-13. In their reply, plaintiffs disputed Campos's account by attaching an affidavit of Jim Nation, in which he states that plaintiffs "had conversations with Mr. Campos and his agency after he took over [their] policy." Dkt. # 25-1, ¶ 3. Nation states that the agency assured them they would receive requested coverage, explained how the policy worked, and clarified that they qualified for coverage based on the condition of their home. Id. ¶¶ 5-8. For example, he states that plaintiffs "specifically requested coverage that would pay for any losses to [their] home and would replace all damages back to its pre-loss condition [and they] were told by Mr. Campos's agency the coverage procured for [them] provided the coverage requested." Id. ¶ 5. Nation also states that his wife, Lisa Nation, "visited Mr. Campos in person at his office after his agency took over the policy." Id. ¶ 8. Yet, nowhere in Nation's affidavit does he state on what date Lisa Nation visited Campos' agency, by what medium any of the communications about requesting specific coverage occurred, when any of the communications occurred, and with which member of the agency the communications occurred. Nor is there anything else in the record that supports this claim.

When analyzing fraudulent joinder, a court must "pierce the pleadings" and consider not only the facts alleged but also "summary judgment-type evidence such as affidavits and deposition testimony." Hart, 199 F.3d at 246-47; Nerad, 2006 WL 2879057, at *2; Dodd, 329 F.2d at 85. But

unlike in a court's summary judgment analysis, a court analyzing fraudulent joinder is determining whether a possibility of recovery exists. See Frontier Airlines, Inc. v. United Airlines Inc., 758 F. Supp. 1399, 1405 (D. Colo. 1989) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). Although plaintiffs provided an affidavit to controvert State Farm's showing that Campos never had any contact with plaintiffs, that affidavit comprises of nothing more than a series of sweeping, conclusory statements, which are entirely unsupported by specific facts. An affidavit can be a useful method of establishing facts that help the court determine whether remand is appropriate, but "the affidavit must set forth facts, not conclusory statements." BancOklahoma Mortg. Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1101 (10th Cir. 1999). Bald assertions, such as "[plaintiffs] had conversations with Mr. Campos and his agency after they took over [plaintiffs'] policy," cannot controvert specific facts stated in opposition. An affidavit is a written declaration under oath of facts, not suppositions or speculation. For the purposes of establishing a viable claim on the factual basis that Campos or his agents communicated with plaintiffs regarding the policy at issue, Nation's affidavit falls short of the degree of specificity necessary to rebut State Farm's claims that joinder was fraudulent.

By contrast, Campos's affidavits provide specific factual allegations, including information about the searches that he did to confirm that he had no records of communication. When evidence submitted in affidavit form is uncontroverted, a Court may accept those facts as true. Labato v. Pay Less Drug Stores, Inc., 261 F.2d 406, 409 (10th Cir. 1958); Proctor v. State Farm Fire & Cas. Co., No. 06-CV-1150, 2007 WL 9711213, at *1 (W.D. Okla. Jan. 30, 2017). Thus, the Court accepts as true the statements in Campos's affidavit as to the fact that he has no record of communications with plaintiffs given that it is uncontroverted.

Beyond Nation's affidavit, plaintiffs other pleadings fail to identify any specific communication by Campos or any of his agents regarding plaintiffs' policy. Instead, plaintiffs offer vague allegations that Campos "made affirmative representations" to them regarding their insurance policy. Dkt. # 18, at 10, 14, 18, 22, 24; Dkt. # 25, at 3; Dkt. # 2-1, ¶¶ 21, 23-25, 40, 44-45. However, plaintiffs neglect to allege what those "affirmative representations" were, on what dates they were made, to whom they were made, or in response to what they were made. The closest plaintiffs come to alleging that Campos made any statement regarding their policy is a refrain throughout their motion that by issuing the policy, Campos "input" data into State Farm's proprietary software, which generated the replacement cost policy at issue. Dkt. # 18, at 9. Plaintiffs posit that by "inputting" unspecified information about plaintiffs' home, Campos "made a direct and material representation: that Plaintiffs' home, and specifically their roof, was in a condition that met State Farm's stringent underwriting guidelines." Id. Yet, plaintiff fails to ever connect how "inputting" unspecified information into State Farm's system amounted to a "direct and material misrepresentation." In their reply, plaintiffs argue that because the policy automatically renewed "under his agency, Campos made a direct representation relating to the property's condition and the policy's coverage." Dkt. # 25, at 3-4. According to plaintiffs' argument, Campos's involvement with this policy rests either on an unspecified "input" that he made in the State Farm proprietary software or on the fact that he passively "allow[ed]" plaintiffs' policy to automatically renew under his agency. On those grounds, the Court is left with no reasonable basis on which to find that Campos made any actual or implied representations to plaintiffs and, thus, it cannot conclude that plaintiffs could succeed in proving either their negligent procurement claim or their constructive fraud and misrepresentation claim.

The Court acknowledges that other courts, including judges in this judicial district, have reached different conclusions in cases in which a plaintiff joined a non-diverse insurance agent and a defendant insurance company raised the issue of fraudulent joinder. Willard v. State Farm Fire & Cas. Co., No. 25-CV-46, 2025 WL 2419274, at *5 (N.D. Okla. Aug. 21, 2025) (collecting cases). In cases in which courts have granted motions to remand or motions to open discovery as to jurisdictional facts, either the defendant failed to make specific allegations of fraudulent joinder or plaintiffs succeeded in showing that there was a possibility that they could establish a cause of action. Here, however, plaintiff seeks to make a viable claim on a uniquely threadbare recital of conclusions, while State Farm's specific factual allegations meet the heavy burden of showing that there is no possibility of establishing a viable claim against Campos.

Plaintiffs urge the Court to follow Johnson v. Shelter Mutual Insurance Co., No. 23-CV-351, 2024 WL 1009548 (E.D. Okla. Feb. 16, 2024), and Misner v. State Farm Fire & Casualty Co., No. 14-CV-873, 2014 WL 6879094 (W.D. Okla. Dec. 4, 2014), in which both courts found that the party seeking to remand had successfully shown that they had viable claims of negligent procurement and constructive fraud and misrepresentation because insurance agents had failed to procure specifically requested coverage. But take, for example, Misner, in which an agent's lack of communication in response to plaintiffs' requests for coverage was at issue. 2014 WL 6879094. There, the Court permitted jurisdictional discovery prior to granting the motion to remand, in part, because defendant State Farm "point[ed] to no evidence that would negate [the agent's] liability for the claims stated in the petition, . . . merely rely[ing] on a lack of evidence." Id. at *12. Here, State Farm has made an affirmative showing that overcomes the general and conclusory claims made in plaintiff's petition. See Dkt. # 28-2; Dkt. # 22-4. Unlike in Misner, where further development of the record

13

was necessary to determine "what information Plaintiffs provided to [the agent] or what part [the agent] played in determining coverage of their policy," the record here already bears out that Campos had no contact with plaintiffs and therefore could not have received or provided them with information regarding their policy renewal or coverage. Misner, 2014 WL 6879094, at *11-12.

Likewise, in Johnson, the record before the court supported the finding that the agent "collected necessary information from Plaintiff and assisted in determining coverage by using [the insurance company's] computer program." 2024 WL 1009548, at *4. Plaintiff also alleged, with specificity, facts such as that the agent "informed her that not only would the $360,000 policy limit be sufficient to rebuild her home but that Plaintiff 'would also save premium dollars by choosing this amount.'" Id. (quoting Johnson, 2024 WL 1009548, Dkt. # 2-2, ¶ 25). Here, plaintiffs' allegations that Campos made "representations" do not resemble the level of particularity stated in Johnson. Compare Dkt. # 2-1, ¶ 20 ("State Farm's captive agents represent to the insured the coverage will pay for any losses that occur and pay an amount to restore the damaged property to its pre-loss condition."), with Johnson, 2024 WL 1009548, Dkt. # 2-2, ¶ 46 ("Plaintiff contacted and engaged [the agent] to procure insurance for her home. Plaintiff provided [the agent] all details requested about the property, and asked [the agent] to procure her a replacement cost policy for her home. [The agent] represented to Plaintiff she could obtain the insurance coverage requested and represented and agreed to procure such coverage that would provide replacement cost coverage to repair and/or replace the property back to its pre-loss condition in the event of damage and/or loss.").

Plaintiffs also assert that their allegations are "indistinguishable from" allegations that merited remand in Pruitt v. State Farm Fire & Casualty Co., No. 25-CV-43, 2025 WL 1030353 (W.D. Okla. Apr. 7, 2025). In Pruitt the court granted plaintiff's motion to remand on the basis that

14

defendant State Farm had failed to show with complete certainty that the agent could not have been negligent in performing his underwriting duties. Id. at *4. There, the court cited a series of cases from the Western District of Oklahoma, all of which remanded cases involving negligent procurement on the bases of plaintiffs' allegations. Id. at *3. These cited cases, however, all share a commonality in the operative language that describes the prevailing allegations: "the insurance agent allegedly told the insured that . . .," "plaintiff alleged that 'the agent represented that . . .,'" "denial was contrary to the [agents'] representations that . . . ." Id. (first citing Ross v. State Farm Fire & Cas. Co., No. 23-CV-189, 2024 WL 1092540, at *2-3 (W.D. Okla. Mar. 13, 2024), then quoting Kyger v. State Farm Fire & Cas. Co., 649 F. Supp. 3d 1200, 1206 (W.D. Okla. 2002), then quoting Oliver v. State Farm Fire & Cas. Co., No. 24-CV-789, 2025 WL 457112, at *2-3 (W.D. Okla. Feb. 11, 2025)) (emphases added). In those cases, just as in Pruitt, the plaintiffs alleged sufficient facts to show that the joined agent had made some representation, statement, or communication to the plaintiffs, which the court could articulate as the basis for a viable claim. In this way, plaintiffs claims are distinguishable from Pruitt, as well as Ross, Kyger, and Oliver.

The Court finds, with complete certainty based on all the allegations in plaintiffs' pleadings, that plaintiffs do not state a viable claim against Campos. Plaintiffs have failed to allege that they communicated with Campos or that Campos made any representations, communications, or statements to them on any single occasion regarding the policy at issue.[2] Therefore, plaintiffs' allegations cannot support claims of either negligent procurement of insurance or constructive fraud and misrepresentation. Even construing all ambiguities in favor of the plaintiffs, the Court finds that defendant State Farm has met its heavy burden in establishing fraudulent joinder.

---

[2] In fact, the only communication with the Campos agency about this policy was the April 2023 invitation, which plaintiffs declined. Dkt. # 28-2, ¶ 10.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to remand (Dkt. # 18) is **denied**. Plaintiffs' claims against Jim Campos are **dismissed**. **Jim Campos is terminated as a party to this case.**

**IT IS FURTHER ORDERED** that defendant Jim Campos's motion to dismiss (Dkt. # 9) is **moot**.

**DATED** this 16th day of October, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE